## Case No. 923.

### BANK OF THE UNITED STATES v. LONGWORTH et al.

[1 McLean, 35.] [1]

Circuit Court, D. Ohio. July Term, 1829.

CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS —JUDGMENT LIENS—PRIORITIES.

1. A judgment is a lien on the lands of the defendant within the county, if execution on it be issued and levied within a year.

[Cited in Pence v. Cochran, 6 Fed. 275.]

2. But the judgment on which execution does not issue within the year, constitutes no lien against a subsequent bona fide judgment, on which execution is issued within the year.

[Cited in Pence v. Cochran, 6 Fed. 275.]

3. The purchaser under the judgment cannot be in a worse situation, than the plaintiff who claims the purchase money under a prior lien.

4. The construction of a statute by the supreme court of the state, forms a rule of decision for this court.

[Cited in Pence v. Cochran, 6 Fed. 271.]

5. A law which regulates the issuing of executions on judgments previously rendered, [Act Ohio, Feb. 4, 1824, § 17, 22 Stat. 114,] affects the remedy merely, and is not ex post facto, nor does it impair the obligation of the contract.

[See McClurg v. Kingsland, 1 How. (42 U. S.) 202; Bronson v. Kinzie, Id. 315; Gordon v. South Fork Canal Co., Case No. 5,-021; U. S. v. Conway, Id. 14.849.]

[At law. Action by the Bank of the United States against Longworth and Wright to recover possession of certain real property. Judgment for defendants.]

This case was argued by Messrs. Caswell and Starr for the plaintiffs, and by Mr. Hammond for the defendants.

OPINION OF THE COURT. This action was brought by the Bank of the United States, to recover possession of a lot of ground in the city of Cincinnati, under a sheriff's deed. The judgment on which the lot was sold was rendered in April, 1818, in a writ in which Adam Demsey was plaintiff, John Gibson and Thomas Heckwelder defendants. Execution was issued 2nd October, 1828, and levied on the property in controversy, 6th October, 1828. The sale was made the 7th November, and the sheriff's deed was executed the 3rd of December following. The defendants also claim under a

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

sheriff's deed, bearing date 16th January, 1822. The judgment under which this sale took place was rendered in August, 1820, against the same defendants, at the suit of Thomas Graham. Execution was issued on this judgment, returnable to December term ensuing, which was levied on the same lot, and it was sold on a pluries venditioni exponas, the 24th December, 1821. Where the highest judicial court of a state has given a construction to its statutes, such construction is considered by the courts of the United States, as a rule of decision, unless it be repugnant to the laws or constitution of the federal government. This course is sanctioned by sound policy, and a due regard to the institutions of the respective states. The question involved in this controversy depends on the construction of the different statutes which regulate judgments and executions.

By the act of the 24th February, 1820, [section 2, 18 Ohio Laws, 180,] it is provided, "that the lands, tenements and real estate of the defendants shall be liable to the satisfaction of the judgment from the first day of the term in which the judgment is entered," &c. This act limits the lien of the judgment to real estate within the county, and from the time of levying the execution, on lands without the county. This act is repealed by the act of the 1st February, 1822, which does not alter the lien of the judgment, but provides, "that in all cases where the party obtaining judgment shall neglect for one year after the first day of the term in which such judgment shall have been rendered to sue out execution thereon, and cause the same to be levied according to the provision of this act, such judgment shall not operate as a lien upon the debtor's estate to the prejudice of any other bona fide judgment creditor." The 16th section of this act provides "that no judgment heretofore rendered, on which execution shall not be taken out and levied before the expiration of one year next after the taking effect of this act, shall operate as a lien upon the estate of any debtor, to the prejudice of any bona fide judgment creditor." This law was repealed by the act of the 4th February, 1824, which in the 17th section provides, [22 Ohio Laws, 114,] "that no judgment heretofore rendered or which hereafter may be rendered, on which execution shall not have been taken out and levied before the expiration of one year next after the rendition of such judgment, shall operate as a lien upon the estate of any judgment debtor to the prejudice of any bona fide judgment creditor." Under this act the supreme court of the state have decided that the lien of any judgment, without reference to the time of its rendition, ceases to operate against a subsequent bona fide judgment creditor, if execution be not issued on it within the year. 2 Ham. [2 Ohio,] 65.

It is contended that the provisions of this act cannot be applied to judgments entered

before its passage, as it would be destructive of rights which had become vested under previous laws. This effect, however, has been given to this act by the decision referred to; and in several cases subsequently, all of which are acquiesced in, and seem to be considered as settling the construction of the act. The provision in the constitution of Ohio that no ex post facto law shall be passed if it embrace civil as well as criminal cases, does not reach the case; and as the change in the law does not impair the obligation of the contract, but modifies the means of enforcing it, it has not been considered in the above cases, nor is it, repugnant to the constitution of the United States. Previous to the law of 1822, the lien continued on the judgment without limitation as to the time of issuing the execution. The law of 1824 transfers this lien on judgments previously entered, to judgments subsequently obtained on which executions have been issued within the year. Some doubt may exist whether the legislature can take away the right of any citizen fairly acquired under an existing law, and vest it in another individual, on account of acts done before the passage of the law, and which could have been in no respect influenced by its provisions. But if the power of the legislature be only doubtful, this court would incline to give effect to its acts; and still more will they be inclined to give effect to them, where by the highest judicial tribunal of the state they have been decided to be constitutional. Under the act of 1824, in the case of Shuee v. Ferguson, 3 Ham. [3 Ohio,] 136, the supreme court decided, that to continue the lien of the judgment on any particular piece of real estate, there must be a levy upon it within the year; that a levy on property releases all other property not levied on, from the lien of the judgment; and that such property may be taken in execution on a junior judgment. These decisions it is contended, were made on questions between judgment creditors, and cannot apply to purchasers of real estate under judgments. The court awarded the money, in the cases cited, to the judgment creditor who had the preferable lien; and does it not follow that the purchaser under the judgment having the preferable lien, would be protected? Is it not, in effect, the same question as if the plaintiffs in the two judgments claimed the money arising from the last sale, supposing the first sale of the lot not to have been effected? In this case it appears that from April term, 1818, at which the judgment was entered, under which the plaintiff claims, there was no levy on the property in controversy until the 6th October, 1828. In April, 1819, by the decision of the supreme court, the lien of this judgment ceased to operate on the property, and it was liable to be taken on any junior judgment, before the 6th October, 1828, when the levy was made. And that levy was voidable by any bona fide judgment creditor who obtained his judgment within a year preceding it. The judgment under which the defendants claim was rendered at August term, 1820; and execution issued within the year and was levied on the lot. No doubt can exist that the junior judgment creditor would be entitled to the money in the case supposed, under the decisions referred to, he having issued his execution within the year and fixed his lien on the property by the levy. But the sale of this property was made on the junior judgment, before the act of 1824 took effect; and it is contended that consequently the provisions of that act cannot reach the case. This might be admitted, if the elder judgment did not come within the provisions of that act. It is not denied that at the time the levy was made under the junior judgment, the elder judgment had the preferable lien, as the law at that time did not require execution to issue within any limited time to continue it. Had the property, therefore, been levied on by an execution issued on the elder judgment, at any time before the act of 1824 could affect the case, the proceedings would have been regular and a sale of the premises valid, notwithstanding the previous sale under the junior judgment. But such proceeding was not had.

The act of 1824 had been in force several years when the levy and sale, under which the plaintiff claims, were made. The provisions of this act, therefore, apply to the case, and the question is, whether the proceeding on the junior judgment to a sale of the premises places the purchaser in a worse situation, than the judgment creditor would have stood, had the judgment remained unsatisfied after the execution was levied. That the purchaser at the sheriff's sale is entitled to all the legal and equitable rights, which could be claimed by the judgment creditor, will not be doubted. Has the sale of the premises weakened the right of the judgment creditor; and is this right less strong in the hands of the purchaser, under the execution? The right which the elder judgment creditor possessed by virtue of his lien, was taken away by the act of 1824; and is it not the same thing, whether this right was destroyed by a levy on the property within the year, under the junior judgment, or by a levy and sale? The plaintiff in the junior judgment was more diligent than the plaintiffs in the elder judgment, and it was the policy of the statute to protect the diligent. Would it not be absurd to say that a levy would fix the right of the junior judgment creditor, and that this right was not transferred to the purchaser at the sheriff's sale? Did this sale destroy or injuriously affect the lien of the judgment? Had the sale not been effected, the property was bound beyond all question, by the judgment and levy, and it was not liable to be sold under the prior judgment. The sale being made, would rather give additional force to the lien, than weaken it. The law of 1824 has a retro-

spective effect without limit, on any judgment which remained unsatisfied. Such is the effect given to it by the cases cited. Where a levy has been made on a junior judgment within a year from its rendition, and the levy under a prior judgment has not been made within the year, nor until the act of 1824 took effect, the first levy fixes the lien on the junior judgment, and the sale in no respect weakens it. The last levy is therefore void against the junior judgment creditor, and equally so against the purchaser of the property at the sheriff's sale. This construction of the act of 1824 is considered to come clearly within its spirit and effect, under the decisions of the supreme court.

I confess I entertain some doubts as to the correctness of the decision, which, in effect, transfers the lien from the judgment to the levy of the execution. If the lien of the judgment be limited to the property levied upon, the judgment, after the levy, has no binding force on other real property within the county. The policy of the act seems to require diligence by a judgment creditor, and prevents his holding a judgment over the property of the debtor, so as to prevent other creditors from reaching it. But, it would seem to me, that the policy of the act, as well as its letter, would be carried into effect by issuing an execution on the judgment in good faith, within the year, and pursuing it with diligence. That the lien of the judgment should not be limited to the property levied on, but should continue to cover all the real property of the defendant within the county, until the money was made. The supreme court, however, have decided this question, and as their decision, giving a construction to the statute, forms the rule of decision in this court, I am disposed to acquiesce in the decision. Any objection to the return of the sheriff, in not designating with accuracy the different lots or pieces of property sold on the execution, is obviated by the deed.